# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROGER LOCKLEAR, #214-6696, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-433 |
| MD DEPT. PUBLIC SAFETY CORRECTIONAL SERVICES, | * | |
| WARDEN RICHARD J. GRAHAM, | * | |
| CHIEF OF SECURITY BRADLEY O. BUTLER, | * | |
| MED. REGIONAL ADMIN. SAM ROBIN, MED. ADMINISTRATOR, | * | |
| NURSE PRACTITIONER JANETTE CLARK,[1] | | |
| ARP COORDINATOR ALICIA A. CARTWRIGHT, CO II, | * | |
| WEXFORD HEALTH SOURCES, INC., | * | |
| Defendants | | |

***

## MEMORANDUM OPINION

Pending before the Court are Correctional Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS"), Warden Richard J. Graham, Chief of Security Bradley O. Butler, and Correctional Officer Alicia A. Cartwright,[2] and Medical Defendants Nurse Practitioner Janette Clark and Wexford Health Sources, Inc. ("Wexford") unopposed Motions to Dismiss or in the alternative for Summary Judgment.[3] ECF Nos. 14, 18. The Court finds no need

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of the names of Defendants Janette Clark and Alicia A. Cartwright.

[2] Service of process was not accepted on behalf of Defendants "Medical Regional Administrator Sam Robin" and "Medical Administrator." ECF No. 12 at 2. Because the Complaint does not sufficiently state a claim as to these individuals, each are dismissed without prejudice.

[3] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court notified Locklear in writing on May 11, 2018 and June 18, 2018 that Defendants' motions had been filed and Locklear

for a hearing. *See* Local Rule 105.6 (D. Md. 2018). For reasons that follow, Defendants' motions, construed as Motions for Summary Judgment, shall be GRANTED.

**I.     BACKGROUND**

Locklear, committed to the custody of DPSCS and currently confined at the Western Correctional Institution in Cumberland ("WCI"), alleges denial of medication to treat pain following surgery following a compound fracture to his leg. ECF No. 1 at 3. Liberally construed, Locklear's *pro se* claim alleges violation of his Eighth Amendment right to be free from cruel and unusual punishment. Locklear asserts that his leg is swollen and cannot comfortably support his weight. ECF No. 1 at 5. He seeks $500,000.00 in damages and injunctive relief "mandating the condition . . . be corrected" and that the prison be subject to "federal oversight" and a "probe targeting corruption." ECF No. 1 at 3.

Locklear's prison medical records corroborate that Locklear suffered a compound fracture to the left tibia (shin) "years ago," which was repaired surgically with open reduction and internal fixation. Locklear was prescribed Neurontin for nerve damage.[4] ECF No. 14-1 at 4. On March 21, 2017, while housed at the Metropolitan Transition Center ("MTC"), medical personnel examined Locklear and documented that Locklear had normal range of motion and intact sensation in his leg. No swelling was apparent, and Locklear denied numbness, tingling, or tenderness. *Id.* at 4. Locklear refused Tylenol and Motrin for discomfort and was told he would be referred for his pain management needs. *Id.*

---

was entitled to file an opposition with supporting materials. ECF Nos. 15, 19. Locklear has opted to not respond.

[4] Neurontin (gabapentin), an anti-epileptic medication, also is used to treat some types of pain. *See* http://www.drugs.com/neurontin.html (last reviewed January 30, 2019).

On March 27, 2017, while at MTC, Locklear complained of nerve pain and a lack of sensation around his scar. He requested and received a prescription for Neurontin. ECF No. 14-1 at 6-9. The prescription was renewed again on April 25, 2017, July 20, 2017, and September 5, 2017. *Id.* at 10, 18-19, 20-21.

In late October of 2017, Locklear was transferred to WCI. ECF No. 14-1 at 24. Defendant Clark, a nurse practitioner, examined Locklear on November 17, 2017 in the chronic care clinic. Clark noted that Locklear walked without a limp and was able to climb on and off the exam table without difficulty or discomfort; that his daily activities were not impaired; and that his extremities appeared normal, with no signs of redness or swelling. *Id.* at 27. Clark informed Locklear that any request to renew his Neurontin prescription may not be approved. *Id.* at 31. DPSCS State Medical Director had previously identified Neurontin as a drug susceptible to misuse, overuse or abuse due to its sedative and euphoric effects. ECF No. 14-2, ¶ 12 (Aff. of Dr. Asresahegn Getachew). Accordingly, DPSCS limited Neurontin's use to treat seizure disorders and neuropathic pain (nerve pain) caused by herpes virus or shingles (herpes zoster) per FDA rules. *Id.* ¶ 13.

Clark requested approval to renew Locklear's Neurontin prescription which was denied. ECF No. 14-1 at 30-35. Locklear thereafter was weaned off Neurontin, with the doses tapered to 600 mg twice a week for one week, 400 mg twice a week for one week, 200 mg twice a week for one week, and 200 mg once a day for one week. *Id.* The ultimate medical plan was to substitute Nortriptyline for the Neurontin. *Id.*

Less than two months later, on December 3, 2017, Locklear complained to Clark that his lower left leg ached and burned. Locklear also vigorously disputed the wisdom of tapering his

3

Neurontin. ECF No. 14-1 at 36-39. He stated other pain medications such as Elavil,[5] Nortriptyline,[6] and Cymbalta,[7] caused restless leg syndrome, and instead requested Lyrica,[8] which was prescribed. *Id*. at 39-40.

On January 24 and 25, 2018, Locklear again complained of leg pain by submitting written sick call slips. *Id*. at 57-58. On January 27, 2018, Dennis Martin, RN examined Locklear. Martin's records reflect that Locklear had normal range of motion in the leg, normal gait, and could bear weight fully on the leg. *Id.* at 44.

On February 8, 2018, Nurse Practitioner Peggy Mahler examined Locklear who complained to Mahler about left leg pain from below the left knee down to the ankle. ECF No. 14-1 at 45-47. Locklear also noted that Motrin did not ease his pain. Mahler proposed that Locklear try Tegretol,[9] but Locklear declined, again expressing a preference for Neurontin or

---

[5] Elavil (amytriptiline), an anti-depressant, can be used to treat neuropathic pain. *See* http://www.drugs.com/amitriptyline.html (last reviewed January 30, 2019).

[6] Nortriptyline, an antidepressant, may also be used to treat nerve pain such as peripheral neuropathy and postherpetic neuralgia. *See* http://www.webmd.com/drugs/drug-l 071 0-nortriptyline+oral.aspx?drugidl 071 O&drugname nortriptyline+oral (last reviewed January 30, 2019).

[7] Cymbalta (duloxetine) is a selective serotonin and norepinephrine reuptake inhibitor antidepressant (SSNRI) that affects chemicals in the brain that may be unbalanced in people with depression. Cymbalta is used to treat major depressive disorder and general anxiety disorder and may be used to treat fibromyalgia or chronic muscle or joint pain (such as low back pain and osteoarthritis pain) and pain caused by nerve damage in adults with diabetes (diabetic neuropathy). *See* https://www.drugs.com/cymbalta.html (last reviewed January 30, 2019).

[8] Lyrica (pregabalin) is an anti-convulsant that slows impulses in the brain that cause seizures. It also affects chemicals in the brain that send pain signals across the nervous system and is used to treat fibromyalgia and pain caused by nerve damage in people with diabetes (diabetic neuropathy), herpes zoster (post-herpetic neuralgia), or neuropathic pain associated with spinal cord injury. *See* http://www.drugs.com/lyrica.html (last reviewed January 30, 2019).

[9] Tegretol (Carbamazipine) is an anti-convulsant used to treat epilepsy as well as pain associated with one form of neuralgia. *See* http://www.drugs.com/ppa/carbamazepine.html (last reviewed January 30, 2019).

Lyrica. *Id*. Mahler found mild tenderness below the knee and left leg without any obvious swelling, skeletal tenderness, or joint deformity. Mahler further noted that Locklear enjoyed normal range of motion, walked without a limp, and could lift himself onto and off the exam table without difficulty. *Id.* Mahler ordered an x-ray, advised Locklear to refrain from running and jumping, and referred Locklear to the Regional Medical Director for evaluation for pain management. *Id.* An x-ray taken on February 12, 2018 revealed metallic hardware in the tibia, normal anatomical alignment, and no indication of acute injury or bony abnormality. *Id.* at 63.

On February 23, 2018, Locklear submitted a sick call slip requesting to be seen for pain medication. *Id.* at 59. On February 27, 2018, Michael Klepitch RN saw Locklear and noted that Locklear was angry because he could not obtain his desired pain medications. *Id.* at 48-49. On March 18, 2018, nurse Clark examined Locklear. He complained of intermittent and variable left ankle pain which was made worse by bending, moving, and walking. *Id.* at 50-52. Again, Clark noted that the pain had not affected Locklear's daily living activities. Nor did Locklear have any trouble getting on and off the exam table, and his leg was not swollen or red. *Id.*

At this visit, Locklear suggested that he would no longer wanted Neurontin, but persisted in his quest for Lyrica to treat his "nerve damage." *Id.* at 50-52. Locklear was offered Depakote ER[10] to treat his nerve pain, but he that declined that prescription. *Id.* Plaintiff also refused Elavil, Nortriptyline and Cymbalta. *Id.* Since that time, Locklear has not complained of nerve pain related to his leg injury.

---

[10] Depakote is an antiepileptic drug sometimes used to treat chronic neuropathic pain and fibromyalgia. *See* https://www.nbci.nlm.nih.gov/pubmed/2197591 (last reviewed January 30, 2019).

5

## II. STANDARD OF REVIEW

Defendants seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or alternatively, summary judgment in their favor under Rule 56. When ruling on a motion to dismiss, the court ordinarily does not consider evidence beyond the four corners of the Complaint. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, where the parties submit such evidence, the Court may convert the motion to one for summary judgment so long as all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Where the movant expressly seeks summary judgment and attaches evidence beyond the pleadings, the non-movant is said to have been given adequate notice that the Court may treat the motion as one for summary judgment. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Defendants have submitted evidence beyond the pleadings, to which Locklear has not otherwise objected. Fed. R. Civ. P. 12(d). The Court, therefore, construes the motion as one for summary judgment.

Summary judgment will be granted only where the evidence, viewed most favorably to the nonmoving party, fails to generate a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, at the summary judgment stage, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment is also appropriate where the party bearing the burden of proof at trial fails to make a sufficient showing on an essential element of the claim asserted. *Celotex*, 477 U.S. at 322-23.

Locklear is self-represented, and so the Court construes his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, the Court must also fulfill its affirmative obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex*, 477 U.S. at 323-24. With this standard in mind, the Court turns to the Defendants arguments.

## III. ANALYSIS

### A. Medical Defendants

Wexford asserts that it is a not a "person" capable of being sued for constitutional violations pursuant to 42 U.S.C. § 1983. The Court agrees. Section 1983 permits suit against "any person who shall subject, or cause to be subjected," the plaintiff "to the deprivation of any rights...." In certain contexts, individuals employed private corporations who act under color of law may be subject to § 1983 liability. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–29 (4th Cir. 1999). However, because the doctrine of *respondeat superior*[11] does not apply to § 1983 claims, *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004), a corporation may be held liable "only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin,* 195 F.3d at 728.

No facts pleaded or presented support any inference that Locklear suffered constitutional injury because of any official policy or custom that Wexford implemented. To the extent Locklear was denied medication based on Wexford's adherence to DSCPS guidelines, no rational trier of fact could find that such policy was constitutionally infirm. Summary judgment is therefore proper

---

[11] The doctrine of *respondeat superior* holds an employer legally responsible for wrongful acts done by an employee if such acts occur within the scope of employment.

as to Wexford.

Claims against Nurse Clark likewise do not survive challenge. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" as part of the guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide such attention or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of a serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison

8

officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actual taken, not those that could have been taken).

Viewing the record in the light most favorable to Locklear, Clark's conduct does not amount to an Eighth Amendment violation. Clark and other medical personnel assessed Locklear's medical needs and responded appropriately. This included discussing medically appropriate alternatives to Neurontin and Lyrica, all of which Locklear rejected. However, Locklear's disagreement with an otherwise appropriate medical course of action does not constitute an Eighth Amendment violation. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (disagreements between inmate and physician over proper medical care do not state a § 1983 claim absent exceptional circumstances); *see also Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970). Summary judgment is therefore granted in Clark's favor.

### B. Correctional Defendants

Claims against DSCPS also do not survive challenge because as a state agency, it is immune from suit in federal court pursuant to the Eleventh Amendment to the United States Constitution, unless such immunity is waived by consent or Congressional act. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984*). See also Florida Dept. of Health v.*

9

*Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*).  No exception to Eleventh Amendment immunity applies to DSCPS.  Thus, all claims against it must fail as a matter of law.

The individual Correctional Defendants, Graham, Butler and Cartwright, generally did not provide WCI prisoners medical treatment, and instead relied on Wexford's medical staff to fill that role. ECF No. 18-2, Graham Decl. at ¶ 2 - ¶ 4.  Their involvement in Locklear's matter was limited to his administrative complaints.  Graham received Locklear's letter complaining about access to Neurontin on December 15, 2017 and routed the letter to Wexford's medical department for response.  ECF No. 18-3, Emerick Decl. at ¶ 3 and attachments at 2-7.  The grievance was investigated through the ARP process.  ECF No. 18-4, Inmate Mail Log Report.  During the investigation, Wexford employee Burnice Swan, RN, informed the investigators that Locklear was tapered off Neurontin "per state guidelines and that Locklear declined the substitution of "[o]ther alternative medications." *Id.*  On February 6, 2018, Locklear submitted another ARP grievance concerning delays in scheduling a provider for medications that was received in the ARP office the following day.  ECF No. 18-4 at 4-5.  The grievance too was investigated and dismissed on February 15, 2018, after input from Wexford.  *Id.* at 8, 11-12.  In short, the record evidence fails to support that any of the named corrections officers, or their facilitation of the ARP process, violated Locklear's constitutional rights.  Summary judgment as to these defendants is granted.[12]

### C. Supplemental Jurisdiction Over State Tort Claims

To the extent that Locklear intends to pursue claims of medical negligence or malpractice against Wexford or its medical personnel, this Court declines to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. § 1367.  Alternatively, no evidence demonstrates that

---

[12] Because the Court grants summary judgment in the Defendants' favor, the Court need not decide whether they are qualifiedly immune.

Locklear first presented his claims to the Maryland Health Care Alternative Dispute Resolution Office (HCADRO) as he must before filing suit. *See* Health Care Malpractice Claims Act ("the Act"), Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-01and -02; *see also Roberts v. Suburban Hospital Assoc., Inc.*, 73 Md. App. 1, 3 (1987); *Davison v. Sinai Hospital of Balt. Inc.*, 462 F. Supp. 778, 779-81 (D. Md. 1978), *aff'd*, 617 F.2d 361 (4th Cir. 1980). This pre-suit filing requirement applies to claims sounding in medical negligence, and even those filed in federal court. *See Davison*, 462 F. Supp. at 779-81. Failure to exhaust the claim before HCADRO warrants dismissal, albeit without prejudice so that Locklear may pursue such claims in HCADRO, if possible.

## IV. CONCLUSION

For the above stated reasons, the Court grants the Defendants' motions. A separate Order follows.

Date: 2/1/19                                    /S/
                                                Paula Xinis
                                                United States District Judge